Eastland Joint Vocational School District, Appellee and Cross-Appellant, *v.* Department of Education, Appellant and Cross-Appellee.

(No. 76-1033—Decided May 11, 1977.)

92

*Messrs. Graham, Redick & Dutro* and *Mr. James L. Graham,* for appellee and cross-appellant.

*Messrs. Alexander, Ebinger, Holschuh, Fisher & Mc-Alister* and *Mr. John D. Holschuh,* for appellant and cross-appellee.

HERBERT, J. The basic questions presented by this appeal are whether the State Board of Education is empowered to assign a school district to a joint vocational school district, and whether, such assignment having been made, the Board is empowered to require the two districts to

contract so that students affected are offered suitable vocational services.

R. C. 3313.91 provides, in relevant part:

"The State Board of Education may assign school districts to joint vocational districts and shall require districts to enter into contractual agreements pursuant to Section 3313.90 of the Revised Code so that special education students as well as others may receive suitable vocational services."

Cross-appellant Eastland asserts that the Board may not assign a local school district to an existing joint vocational school district absent the consent of the latter's board of education, and without providing an opportunity for a petition of remonstrance by the electors of the local school district. Eastland contends further that R. C. 3313.-91 must be read in *pari materia* with R. C. 3311.213, which provides for the enlargement of an existing joint vocational school district. The Court of Appeals held, similarly, that the Board could not order joinder, inasmuch as none is possible unless the provisions of R. C. 3311.213 are followed.

In our opinion, R. C. 3311.213 relates to the voluntary expansion of existing joint vocational school districts. The statute became effective on October 26, 1961, six years before the establishment and maintenance of an adequate vocational education program by each school district was required by R. C. 3313.90.[1] Under the facts at bar, R. C.

---

[1] R. C. 3313.90 provides:

"Each school district shall establish and maintain a vocational education program adequate to prepare a pupil enrolled therein for an occupation which program shall meet standards adopted by the State Board of Education. A school district that is a member of a joint vocational school district or that contracts with a joint vocational school district or another school district for vocational education and that meets the standards adopted by the State Board of Education is in compliance with this section, which standards shall include criteria for the participation by nonpublic students in such programs without financial assessment, charge, or tuition to such student except such assessments, charges, or tuition paid by resident public school students in such programs. Such nonpublic school students shall be included in

3313.91 should be read in the perspective of R. C. 3313.90, as opposed to R. C. 3311.213. R. C. 3313.91 pertains to situations wherein the expansion of an exsiting joint voca-

the average daily membership of the school district maintaining the vocational education program as a part-time student in proportion to the time spent in the vocational education program.

"In meeting standards established by the State Board of Education, school districts, where practicable, shall provide vocational programs in high schools. A minimum enrollment of fifteen hundred pupils in grades nine through twelve is established as a base for comprehensive vocational course offerings. A school district may meet this requirement alone, through a cooperative arrangement pursuant to Section 3313.92 of the Revised Code, through school district consolidation, by membership in a joint vocational school district, by contract with a school licensed by any state agency established by the Revised Code which school operates its courses offered for contracting with public schools under standards as to staffing and facilities comparable to those prescribed by the State Board of Education for public schools provided no instructor in such courses shall be required to be certificated by the State Department of Education, or in a combination of such ways. Exceptions to the minimum requirement of fifteen hundred pupils may be made by the State Board of Education based on sparsity of population or other factors indicating that comprehensive educational and vocational programs as required by this section can be provided through an alternate plan.

"Approval of state funds for the construction and operation of vocational facilities in any school district shall be contingent upon a comprehensive vocational program plan approved by the State Board of Education no later than July 1, 1970. The State Board of Education shall not approve a school district plan unless the plan proposed reasonably meets the vocational needs of other school districts in the general area of the school district submitting the plan. The plan shall be submitted to the State Board of Education no later than April 1, 1970. Such plan shall contain:

"(A) The organization for vocational education pursuant to the requirements of this section;

"(B) Vocational programs to be offered in the respective comprehensive high schools, in specialized schools or skill centers, and in joint vocational schools;

"(C) Remodeled, additional, and new vocational facilities required at the respective locations.

"In approving the organization for vocational education the State Board of Education shall provide that no school district is excluded in the state-wide plan."

tional school district cannot be reached via voluntary agreement; R. C. 3311.213 applies in situations where the joinder is voluntarily accepted.

Pursuant to R. C. 1.47(B), it is presumed that in enacting a statute the General Assembly intended that the entire law be effective. The wording of R. C. 3313.91, that the Board "may assign school districts to joint vocational districts," clearly denotes the Board's authority to mandate the outright joinder of school districts to joint vocational districts. The identification of "assignment" with "joinder," in the instant case, is appropriate.[2] This construction obtains despite the use of the conjunctive "and." Were that word to signal legislative delegation to the Board of authority merely to compel contractual arrangements, as argued by cross-appellant and alluded to in the Court of Appeals, the General Assembly could simply have enacted that portion of R. C. 3313.91 which follows the conjunction.

This court has pointed out that, in statutory interpretation, courts "must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance in effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." *Wachendorf* v. *Shaver* (1948), 149 Ohio St. 231, 78 N. E. 2d 370,

---

[2]The general definition of "assign" is: "To make over or set over to another." Black's Law Dictionary (4 Ed. Rev.) 152 (1968).

"An assignment, according to the legal usage of the term, is a transfer or setting over of property, or of some right or interest therein, from one person to another." 5 Ohio Jurisprudence 2d 151, Assignments, Section 2 (1954).

"A legal assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another * * *." 6 American Jurisprudence 2d 185, Assignments, Section 1 (1963).

paragraph five of the syllabus; *Cincinnati Nature Center v. Bd. of Tax Appeals* (1976), 48 Ohio St. 2d 122, 125, 357 N. E. 2d 381.

Under the provisions of R. C. 3313.91, the State Board of Education is empowered to assign school districts to joint vocational school districts. Such assignment having been made, the State Board of Education is under a duty to direct those districts to contract so as to provide suitable vocational services.

We note that the opinion of the referee discerned the inadequate facilities of Eastland as the sole reason for Eastland's rejection of the assignment of students from Hamilton. The December 9, 1974, resolution of the Board called for the admission of Hamilton students into Eastland on an availability of pupil station basis, and upon payment of a charge for each student. The Board seemingly apprehended that logic regulates the admission of Hamilton students into Eastland only as necessary facilities become available, and not in such a fashion that proper education from the vocational standpoint cannot be afforded to those students affected by the order. This appears to be a prudent course, insuring sufficient protection for a district already filled to capacity.

The Court of Common Pleas found the Board's resolution to be supported by reliable, probative, and substantial evidence. The Court of Appeals agreed with that appraisal of these facts and we will not disturb this finding.

The judgment of the Court of Appeals is reversed and the cause is remanded for further proceedings.

*Judgment reversed.*

O'Neill, C. J., Celebrezze, W. Brown, P. Brown, Sweeney and Locher, JJ., concur.