THE STATE, EX REL. VANTAGE JOINT VOCATIONAL SCHOOL
DISTRICT BOARD OF EDUCATION, *v.* HOFFMAN, AUDITOR, ET AL.*

[Cite as State, ex rel. Vantage, v. Hoffman (1978),
57 Ohio App. 2d 201.]

(No. 15-77-3—Decided June 14, 1977.)

*Messrs. Koch & Koch,* for relator.

*Mr. Thomas A. Unverferth,* prosecuting attorney, for respondents Euphemia R. Hoffman, auditor of Putnam County, and Edward J. Heckman, treasurer of Putnam County.

*Mr. William Meikle,* for respondents Thomas Timmerman, auditor of Mercer County, and Clarence J. Bruns, treasurer of Mercer County.

*Mr. Donald J. Johnson,* prosecuting attorney, for respondents Nancy Dixon, auditor of Van Wert County, and Lloyd Basil treasurer of Van Wert County.

GUERNSEY, J.   This is an original action in mandamus filed in this Court by the Board of Education of the Vantage Joint Vocational School District, hereinafter called

---

*Reporter's Note: The judgment in this case was affirmed by the Supreme Court of Ohio, in 54 Ohio St. 2d 384.

the vocational board, with office in Van Wert County, a-gainst the respective County Auditors and County Treasurers of Van Wert, Mercer and Putnam Counties. No alternative writ of mandamus was sought, issue was joined on the complaint of the relator and the respective answers of the respondents and the matter was submitted to the Court on the stipulations of fact of the parties.

The prayer of the complaint is that writs of mandamus issue commanding the respondent Auditors to forthwith proceed to place the tax levy of the relator upon the tax duplicates of the Ottoville, Jennings, Continental and Parkway Local School Districts, hereinafter sometimes referred to as the assigned districts, and the respondent Treasurers to collect the taxes so assessed.

From the admissions in the pleadings and from the stipulations it appears among other things not pertinent and without reasonable dispute that the board of education of the vocational district (formerly named Van Wert County Area Joint Vocational School District) was reorganized on June 27, 1973, with membership thereof consisting of representatives of the boards of education of the Van Wert City School District and of the Van Wert County School District; that by various actions thereafter the vocational district was both enlarged as to territory and as to representation on its board of education; that by resolutions adopted on December 10, 1975, the state board of education, proceeding ostensibly under the provisions of R. C. 3313.90 and R. C. 3313.91 assigned the Ottoville Local School District (Putnam County), the Jennings Local School District (Putnam County), the Continental Local School District (Putnam County) and the Parkway Local School District (Mercer County), each "as a member district in the Vantage Joint Vocational School District effective as of January 1, 1976, in accordance with the conditions set forth in the resolution of assignment for vocational education as adopted by this Board of Education on October 13, 1975"; that anticipating the assignment because of the October 13, 1975, action, the vocational board, on December 3, 1975, resolved that, upon the approval of the State Board

of Education, the membership of the vocational board be reorganized to include representation for the newly assigned districts; that on December 8, 1975, the state board of education approved the requested reorganization of the vocational board of education; that a joint meeting of the budget commissions of Putnam, Mercer, Paulding, Auglaize and Van Wert Counties was called for August 18, 1976, with Putnam County and Auglaize County not represented at the meeting, for the purpose of reviewing the vocational district budget for 1977 and establishing the millage for the 1976 tax year, and by a vote of the representatives of Van Wert County and Paulding County, Mercer County abstaining, a motion was passed "to accept the budget as presented and established a rate of 1.50 for general operation and 1.40 for building"; that notwithstanding that relator knew from the statements made at this meeting by a Deputy Auditor of Mercer County that the levy would not be placed on the Parkway Local School District real estate tax duplicate for the year 1976, relator did not appeal to the Board of Tax Appeals pursuant to R. C. 5705.37; that the said tax levy was never approved by the voters in the Kalida Local School District and the assigned districts nor did said school districts ever contract with the vocational board pursuant to R. C. 3313.91; that relator has not taken any action pursuant to R. C. 3311.213, as to any of said school districts since their assignment by the state board of education pursuant to R. C. 3313.91; that the real estate tax duplicates for the year 1976 and tax statements for both the December 1976 and June 1977 installment of real estate taxes have been prepared, with the collection of the December 1976 installment in progress in Mercer County and completed in Putnam County before this suit was filed; that any change in the 1976 real estate tax duplicate would complicate and delay the collection of June 1977 installment, with derivative problems to the affected school districts; that the Auditors of Van Wert, Mercer and Putnam Counties have not placed the tax levy arising from the joint budget commission meeting on the tax duplicates and the Treasurers of said counties are not collecting said levy as

to real property located in the assigned districts and in Kalida Local School District; that Van Wert County cannot do so until the levy for Parkway Local School District is certified to it by the Auditor of Mercer County, which has not been done; and that Kalida Local School District has an appeal pending in the Court of Common Pleas of Franklin County as to a purported assignment by the state board of education to the vocational district.

The respondents have set up various defenses in their respective answers, the principal defenses being that relator has not set forth a claim for which relief may be granted, relator has failed to show compliance with R. C. 3311.213, there has been no election in Putnam County or Mercer County to approve the levy as one in excess of the ten mill limitation, and the laws relating to budget commission procedure have not been complied with. The Van Wert County Auditor and Treasurer place reliance on the tax levy being contrary to R. C. 5705.48 requiring uniform rates throughout the district and not being properly certified to the Van Wert County Auditor for collection by the Mercer County Auditor, the only affected land in Van Wert County being land of a portion of the Parkway Local School District having its situs in Mercer County.

Initially we are compelled to conclude that the complaint must be dismissed insofar as it may pertain to the levy or collection of a tax of the vocational district as to real property located in the Kalida Local School District because the prayer of the complaint seeks no relief as to that district and there is nothing before this court either by way of admissions in the pleadings, stipulations, or otherwise to show that the Kalida Local School District became a part of or was assigned to the vocational district for any purpose at any of the times here relevant. There is reference in the answer of the Putnam County Auditor and Treasurer to a purported assignment, and in the attached exhibit 2 (a notice of appeal to the Court of Common Pleas of Franklin County) to notification by the State Department of Education on August 15, 1975 that

that district "was to be assigned to the Vantage Joint Vocational School District * * * pursuant to section 3313.-90, Revised Code," but there is nothing in the record before this court to evidence that any such assignment ever took place.

Some years ago (see particularly 129 Ohio Laws 1544 [1961]) the General Assembly provided for the creation of joint vocational school districts on a voluntary basis. R. C. 3311.16, *et seq.* The creation of such a district could be initiated by any local, exempted village, city, or county board of education, or any combination of such districts, and the joint vocational district thus created could include at the time of creation territory of any other consenting school district as well as that of the initiating unit, although each of the school districts joining in the creation would continue otherwise to retain its separate identity and legal existence. The vocational schools in such joint vocational school district were by reason of its creation available to all youth of school age within the joint vocational school district subject to requisite admission standards. The board of education of the joint vocational school district was given the same powers for the management and operation of the district as were granted by law to a board of education of a city school district, as well as the power, subject to vote of the electors of the joint vocational school district, to issue voted bonds for permanent improvements and to levy voted taxes outside the ten mill limitation on the tax duplicates of the school districts in the joint vocational school district. The board was also given the power to charge and collect tuition for the attendance of pupils who are school residents of districts not a part of the joint vocational school district pursuant to arrangements made between the respective boards. R. C. 3311.211.

It was also provided (R. C. 3311.213) that with the approval of the board of education of an existing joint vocational school district any other school district suitably located might become a part of the joint vocational school district unless within the sixty day period after adoption

of the resolution of approval qualified electors residing in the school district proposed to become a part of the existing vocational district equal in number to a majority of the qualified electors voting at the last general election file with "such board of education" a petition of remonstrance against such transfer. Although no vote was then prescribed it is apparent that the filing of the remonstrance prevented the resolution of approval from becoming legally effective. On the other hand, if no remonstrance or an insufficient remonstrance was filed the resolution of approval would become "legally effective" in which event the outstanding tax levies in the vocational school district would be spread as well over the territory of the school district becoming a part of the vocational school district. By subsequent amendments to R. C. 3311.213, further provision was made for the adjustment of the membership of the vocational district's board of education when any addition of a school district was made "pursuant to this section."

Thus, R. C. 3311.213 is silent as to how the enlargement of a joint vocational school district is initiated, i. e., by the action of the school district choosing to join or by other action, but in no event does the enlargement take place unless a resolution of approval adopted by the board of education of the joint vocational school district becomes legally effective. It is only when it becomse legally effective that any duty or right exists under R. C. 3311.213 to spread the existing tax levies "over the territory of the school district becoming a part of the joint vocational school district," or any duty or right exists to enlarge the membership of the joint vocational school board by reason of the district enlargement.

In 1967 R. C. 3313.90 was adopted by the General Assembly. It provided that each school district shall establish and maintain a vocational education program adequate to prepare pupils for an occupation which program shall meet state board of education standards. It further provided that any school district which is a member of a joint vocational school district or which contracts with a joint

vocational district or another school district for vocational education which meets the state standards "is in compliance with this section." In 1969 the section was amended by making it applicable to "a pupil enrolled therein," and by including provisions for nonpublic school students, for minimum enrollment, funding, etc. It further provided, as it does now, that in "approving the organization for vocational education the state board of education shall provide that no school district is excluded in the state-wide plan."

Effective three months after the last amendment to R. C. 3313.90 the General Assembly adopted R. C. 3313.91 permitting any public board of education to contract with any board, etc., for the purchase of any vocational education service for any resident of the district under the age of twenty-one years and to pay for same with public funds. Effective on June 29, 1973, this section was amended by adding the following paragraph:

"The state board of education may assign school districts to joint vocational districts and shall require districts to enter into contractual agreements pursuant to section 3319.90 of the Revised Code so that special education students as well as others may receive suitable vocational services."

It will be observed that neither R. C. 3313.90 nor R. C. 3313.91 provide specifically for the enlargement of joint vocational school districts in any manner other than that prescribed by R. C 3311.213. They are statutes enacted merely to aid in effecting a statewide plan of vocational education by providing for a means of enforcing such education in city, exempted village and local school districts which are not included in a joint vocational school district either by becoming part thereof at its creation or by becoming part thereof by the enlargement process under R. C. 3311.213. In effect, an assignment of a local school district to a joint vocational school district under the provisions of R. C. 3313.91 does not enlarge the vocational district but merely joins the assigned district thereto for "logistical" support responsibilities, i. e., the local school district is responsible as required by the state board of

education to contract. with the joint vocational school district for the vocational education of any resident of the local school district under the age of twenty-one years and to pay tuition for the rendering of such services and. the joint vocational school district is responsible as required by the state board of education to contract with the local district and to provide such district with vocational education to the extent of its facilities upon the payment of tuition as provided in the contract. R. C. 3313.90 and R. C. 3313.91 do not. contemplate any relationship other than by contract and, a contractual relationship existing, there is no provision for nor is it contemplated that the tax levies in the vocational district be spread on the tax duplicates of the local school district so assigned. There would be no reason for a contract if the vocational district had the authority, in such cases, to levy and collect taxes in the assigned district. It is implicit in this contractual relationship: and the payment of tuition thereunder that the cost of such tuition shall be raised by the local school district's own operating levy the same as any other operating expenses of the local school district.

This conclusion is indicated and buttressed by the decision of the Supreme Court in *Eastland* v. *Dept. of Education* (1977); 50 Ohio St. 2d 91, where the court held:

"Under the provisions of R. C. 3313.91, the State Board of Education is empowered to assign school districts to joint vocational school districts. Such assignment having been made, the State Board of Education is under a duty to direct those districts to contract so as to provide suitable vocational services."

In his opinion in that case concurred in by the other members of the Court Justice Herbert also states, page 93:

"In our opinion, R. C. 3311.213 relates to the voluntary expansion of existing joint vocational school districts. The statute became effective on October 26, 1961, six years before the establishment and maintenance of an adequate vocational. education program by each school district was required by R. C. 3313.90. Under the facts at bar, R. C. 3313.91 should be read in the perspective of R. C. 3313.90,

as opposed to R. C. 3311.213. *R. C. 3313.91 pertains to sit-uations wherein the expansion of an existing joint voca-tional school district cannot be reached via voluntary agree-ment; R. C. 3311.213 applies in situations where the joinder is voluntarily accepted."* (Emphasis added.)

The Supreme Court's emphasized conclusion as to the voluntariness requisite to the operation of R. C. 3311.213 indicates that the joinder thereunder must not only be voluntarily accepted but voluntarily sought. That being the case it would require that the action be initiated by the school district which seeks to be joined to the vocational school district.

Although Justice Herbert says in the *Eastland* deci-sion, page 95, that the "wording of R. C. 3313.91, that the Board 'may assign school districts to joint vocational dis-tricts,' clearly denotes the Board's authority to mandate the outright joinder of school districts to joint vocational school districts," such conclusion was neither necessary to the decision nor was it carried into the syllabus. As-suming, however, that it necessarily follows from that decision that "assignment" is equivalent to outright "joind-er," we come then to the issue of what "joinder" is. In our opinion although the word "joinder" does not appear in R. C. 3311.213, that section could be said to contemplate a joinder with the resultant spreading of existing tax levies of the joint vocational school district, and with the joining district having all of the rights (and obligations) attribut-able to any district already a part of the vocational district. On the other hand, the joinder effected under R. C. 3313.91 is a limited joinder which the Supreme Court fully recog-nizes in the *Eastland* case by finding that the state board of education adopted a prudent course, "insuring sufficient protection for a district already filled to capacity," by its action on December 9, 1974, calling "for the admission of Hamilton students into Eastland on an availability of pupil station basis." Thus Hamilton is not on an equality in any respect with the other school districts combined to form the Eastland vocational district. We query also what the ex-tent of joinder is should the districts not arrive at mutually

agreeable contractual terms? In any event we reiterate that the resultant joinder, whatever it is, is not such a joinder as to carry with it and bestow upon the vocational district the right to directly levy and collect taxes in the assigned districts.

Relator argues in its brief that R. C. 3313.91 must be considered to contain two separate grants of power to the state board of education, one giving the authority to assign, the other giving the alternative authority to compel contractual arrangements. Justice Herbert at page 95 of the *Eastland* decision concludes that the grant of power to the board is not "authority merely to compel contractual arrangements." Close analysis of R. C. 3313.91 demonstrates that the statute involves two powers, one permissive, and one mandatory, *i. e.*, the "state board of education *may* assign school districts to joint vocational districts and *shall* require districts to enter into contractual agreements * * * so that special education students as well as others may receive suitable vocational services." (Emphasis added.) It would seem, though not necessary to the decision in this case, that in all appropriate cases the state board *shall* require districts, both the servicing district and the one which needs the service, "to enter into contractual agreements" for vocational services, and *may*, in order to determine which districts shall be served and which shall render the service assign school districts to joint vocational school districts, and thus provide logical organization and eliminate confusion. In situations where geographical location would allow the assignment of a local school to one of several vocational districts the deciding factor could be the ability of the vocational district to provide the service. In situations where several vocational districts could provide the service the deciding factor might be geographical proximity. In either event the joinder would not require or effect consolidation for vocational purposes but merely, as the statute says, an assignment.

It should be emphasized here, as we have merely heretofore alluded, that the only statutory provisions for spreading vocational district tax levies outside the ten mill

limitation on the tax lists of all of the districts making up a vocational district are those contained in R. C. 3311.20 and 3311.21, relating to bond issues and levies submitted to all of the electors in the district and those contained in R. C. 3311.213 relating to the voluntary enlargement of the vocational district. The latter section requires as a condition precedent to the spreading of the tax levies that a resolution of the vocational board approving the enlargement become "legally effective" after opportunity for remonstrance has occurred. Again we observe that in our record there appears no·resolution of approval adopted by the vocational board either before or after the adoption by the state board of education of its resolutions of assignment. The record does include a resolution adopted by the vocational board on December 3, 1975, prior to the assignment, proposing a change of membership of the vocational board but such resolution does not constitute a resolution approving the enlargement of the vocational district even if we ignore the involuntary character of the assignments.

Although we have concluded that there is no statutory basis for the spreading of the vocational district levies here involved on the tax lists of districts merely assigned under R. C. 3313.91 and deem such reason alone sufficient to preclude such levy and collection, we should also observe that the leading cases permitting the levy and collection of existing levies of one district in excess of the ten mill limitation on the tax lists of another in the event of consolidation without the vote of the latter are the cases of *Gigandet* v. *Brewer* (1938), 134 Ohio St. 86, and *Kellenberger* v. *Bd. of Education* (1962), 173 Ohio St. 201. These cases, in addition to the fact that there was a statutory basis for spreading the tax levies, rest on the approval, waiver or estoppel, arising from the authorized right to remonstrate and the failure to do so. As stated at pages 93 and 95 of Judge Gorman's opinion in the *Gigandet* case:

"The county board of education could, if it saw fit, create one county school district. It was given the power to effect mergers and consolidations. In such case, the only referendum available to the elector was by way of

212

remonstrance provided for in the statute. Neither the plaintiff nor any one else availed himself of this remedy. It must therefore be presumed that a majority of those affected by the consolidation favored it.

"* * *.

"Construing the provisions and schedule of Article XII, Section 2 of the Ohio Constitution together with the express grants of authority contained in Article VI, Sections 1, 2 and 3, we are of the opinion that the provisions of Section 4736, General Code, are still valid, and that a remonstrance is the sole method of protest given the taxpayer. If a majority does not remonstrate against the consolidation, the levies in the several districts consolidated, which were inside the limitations, remain inside, and those levies which were outside the limitations remain outside."

Notwithstanding, as heretofore noted, that R. C. 3311.213 provides for the authority to remonstrate in cases of voluntary joinder, R. C. 3313.90 and 3313.91 provide no such authority with relation to involuntary assignments.

Coming then to the specific application of these statutes, these interpretations, and this law to the problem at hand and to the evidence adduced by the parties relating thereto, we find that the Parkway, Ottoville, Jennings and Continental Local School Districts were not a part of the Vantage Joint Vocational School District (or the Van Wert County Area Joint Vocational School District) at its inception and that there is no evidence before this Court that such districts either initiated any action under the provisions of R. C. 3311.213 to become part thereof or that the said vocational district adopted a resolution or resolutions approving the enlargement of the vocational district by making any one or all of such local school districts a part of the vocational district. We find, accordingly, that there was no joinder as contemplated by R. C. 3311.213 permitting the spreading of the tax levies of the vocational district over the territory of any one or more of such local school districts. We further find that there is no evidence of any joinder other than the involuntary limited joinder resulting from an assignment by the state board of educa-

tion under the provisions of R. C. 3313.90 and 3313.91, which may result only in a contractual relationship and not in a relationship permitting the tax levies of the vocational district to be spread over the territory of the assigned local school districts.

So concluding, based on the existing involuntary assignments, there is no clear legal duty on the part of the respondents to levy or collect any of the tax levies of the Vantage Joint Vocational School District in the assigned local school districts and mandamus will not lie to command the respondents to do so.

There being no tax levies which could be so levied and collected the proceedings of the so-called joint budget commission were, in this respect, neither required nor valid and the question of whether the ten mill limitation has been exceeded without an approving election or whether there is uniformity of taxation does not, in fact, exist. It should be observed that notwithstanding that the parties have treated the tax levies here involved as being outside the ten mill limitation there is neither an admission in the pleadings or a stipulation that such is the fact. Our conclusions fully disposing of the action there is no necessity to treat, and we do not treat, the other defenses raised by the parties respondent.

The writs of mandamus prayed for must be, and are, denied and the complaint dismissed at the costs of the relator.

*Writs denied.*

MILLER, P. J., and COLE, J., concur.