THE STATE, EX REL. VANTAGE JOINT VOCATIONAL SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT, *v.* HOFFMAN, AUDITOR, ET AL., APPELLEES.

(No. 77-780—Decided June 21, 1978.)

388

*Messrs. Alexander, Ebinger, Holschuh, Fisher & Mc-Alister, Mr. John D. Holschuh, Messrs. Koch & Koch* and *Mr. Robert Koch*, for appellants.

*Mr. Thomas A. Unverferth, Mr. William Meikle* and *Mr. Donald L. Johnson*, for appellees Putnam, Mercer and Van Wert Counties.

*Per Curiam.* At the outset the initial question resolving the matter of "joinder" can be disposed of by a cursory reading of the first sentence of the syllabus in the case of *Eastland* v. *Dept. of Education* (1977), 50 Ohio St. 2d 91:

"Under the provisions of R. C. 3313.91, the State Board of Education is empowered to assign school districts to joint vocational school districts. Such assignment having been made, the State Board of Education is under a duty to direct those districts to contract so as to provide suitable vocational services."

The second sentence of the above syllabus, decisive

herein, concerns itself with the question of financing brought on by the special circumstances of overcrowding in that case. To distinguish this matter it should suffice to say that there is no known problem of providing space for the additional students "joining" the Vantage Joint Vocational School District. This is a distinct contrast to the *Eastland* case which led to a contract payment for students admitted as space became available.

Consequently, the only issue to be determined by this court in this case is the legality of spreading the tax base throughout the district and the obligation, if any, of the respondent county auditors to place the tax levy of the joint vocational school district on the tax lists of the member school districts in his county. Deciding the issue affirmatively would place a correlated obligation on the treasurers of the three counties involved to collect the tax rate millage in their respective counties.

The appellants chose to rely on an interpretation of the assignment by the State Board of Education under R. C. 3313.91 as being the equivalent of a voluntary joinder of a school district with a joint vocational school district as provided in R. C. 3311.213. As has been previously attended to, this was the *modus operandi* of the initial expansion of the Vantage Joint Vocational School District.

However, the authority of the State Board of Education to make an assignment of the nature herein has its genesis in R. C. 3313.90.[2] It would appear that the pur-

---

[2]R. C. 3313.90:

"Each school district shall establish and maintain a vocational education program adequate to prepare a pupil enrolled therein for an occupation which program shall meet standards adopted by the state board of education. A school district that is a member of a joint vocational school district or that contracts with a joint vocational school district or another school district for vocational education and that meets the standards adopted by the state board of education is in compliance with this section, which standards shall include criteria for the participation by nonpublic students in such programs without financial assessment, charge, or tuition to such student except such assessments, charges, or tuition paid by resident public school students in such programs. Such nonpublic school students shall be included in the average daily membership of the school district maintaining the vocational edu-

pose of that section is to provide vocational education for the school pupils of this state.

R. C. 3313.91 provides for the use of public funds for both public and private vocational service which meet

---

cation program as a part-time student in proportion to the time spent in the vocational education program.

"In meeting standards established by the state board of education, school districts, where practicable, shall provide vocational programs in high schools. A minimum enrollment of fifteen hundred pupils in grades nine through twelve is established as a base for comprehensive vocational course offerings. A school district may meet this requirement alone, through a cooperative arrangement pursuant to section 3313.92 of the Revised Code, through school district consolidation, by membership in a joint vocational school district, by contract with a school licensed by any state agency established by the Revised Code which school operates its course offered for contracting with public schools under standards as to staffing and facilities comparable to those prescribed by the state board of education for public schools provided no instructor in such courses shall be required to be certificated by the state department of education, or in a combination of such ways. Exceptions to the minimum requirement of fifteen hundred pupils may be made by the state board of education based on sparsity of population or other factors indicating that comprehensive educational and vocational programs as required by this section can be provided through an alternate plan.

"Approval of state funds for the construction and operation of vocational facilities in any school district shall be contingent upon a comprehensive vocational program plan approved by the state board of education no later than July 1, 1970. The state board of education shall not approve a school district plan unless the plan proposed reasonably meets the vocational needs of other school districts in the general area of the school district submitting the plan. The plan shall be submitted to the state board of education no later than April 1, 1970. Such plan shall contain:

"(A) The organization for vocational education pursuant to the requirements of this section;

"(B) Vocational programs to be offered in the respective comprehensive high schools, in specialized schools or skill centers, and in joint vocational schools;

"(C) Remodeled, additional, and new vocational facilities required at the respective locations.

"In approving the organization for vocational education the state board of education shall provide that no school district is excluded in the state-wide plan."

identical standards as approved by the state Department of Education. It is the amendment to this section, effective June 29, 1973, which provides the controversy generated in this appeal. It reads as follows:

"The state board of education may assign school districts to joint vocational districts and shall require districts to enter into contractual agreements pursuant to section 3313.90 of the Revised Code so that special education students as well as others may receive suitable vocational services."

As previously stated, this amendment provided the authority construed in *Eastland, supra,* to make an assignment. It should be noted that the second sentence of the syllabus in that case as well as the amendment direct the districts so assigned to enter into contracts for the services to be rendered.

The second sentence of the syllabus in *Eastland, supra,* specifically provides:

"Such assignment having been made, the State Board of Education is under a duty to direct those districts to contract so as to provide suitable vocational services."

Unfortunately, the Vantage Joint Vocational School District, having been advised by the State Board of Education of the impending assignment of the appellee districts, elected to proceed as it had previously done in a voluntary expansion of the district under R. C. 3311.213. We are obliged to conclude that such was neither the procedure directed by the resolution adopted by the State Board of Education, nor by the statute authorizing such assignment.

The appellant cites the case of *State, ex rel. Donahey,* v. *Roose* (1941), 90 Ohio St. 345, as authority for the issuance of the writs of mandamus. At page 350, in that opinion, the following language appears:

"The placing of this levy on the tax duplicate is a mere ministerial duty. In the discharge of this duty the county auditor has no discretion. If he did not perform this official duty within the time the law directed him to

do it, he must do it now. That this will give rise to confusion and impose additional labor upon the auditor in reforming his tax lists and upon the county treasurer in collection of the same is unfortunate, but it does not repeal the law, defeat the levy or destroy the lien of the tax upon the property subject thereto. The same conditions would have arisen had he failed to place any other levy for state or local purposes upon the tax lists within the time and manner provided by law, and yet the state or any political division of the state cannot be permitted to become bankrupt merely because of the default of a ministerial officer in the performance of a plain duty specifically imposed upon him by law.''

However, this instant cause does not turn on any discretionary authority or the abuse of same reposing in any elected official.

Consequently, there can be no correlative obligation on the part of the auditors as treasurers of the respective counties to spread or collect a tax imposed under a misconception of authority. Thus, a writ of mandamus does not lie in these circumstances where there is no clear legal duty to perform an official act. See *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, and *State, ex rel. Meyers,* v. *Chiaramonte* (1976), 46 Ohio St. 2d 230.

Appellant relies heavily on *Gigandet* v. *Brewer* (1938), 134 Ohio St. 86, later cited in and relied upon in the judgment in the case of *Kellenberger* v. *Bd. of Edn.* (1962), 173 Ohio St. 201. Both of these decisions permitted a tax levy outside the ten-mill limitation as proscribed in Section 2, Article XII, of the Ohio Constitution to be spread upon the duplicate of a combined or joined district which did not have the opportunity to vote on such levy and was not a part of the taxing district at the time of such vote. In *Gigandet, supra,* the action was by a county board of education under authority granted by G. C. 4736, since repealed (1943), but now R. C. 3311.26, according to the court in *Kellenberger, supra.* Both of these cases are inapposite to the matter presently before the court. The

joining was done by the county board of education and the statutes in both cases provided for an equitable distribution of funds or indebtedness between the newly created district and any districts from which any portion of such newly created district is taken.

As previously discussed, that is not the language reposed in either R. C. 3313.90 or 3313.91. And, it is not the situation previously determined and interpreted in *Eastland, supra.* Nor does *Eastland* impose any time limitation upon contractual arrangements directed by R. C. 3313.91. Appellant's reliance thereupon is misplaced. Although it may be argued that there are some distant similarities between the *Gigandet* case and the instant case, the dissimilarities are both obvious and overpowering.

For the reasons stated herein the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Celebrezze, W. Brown, P. Brown, Sweeney and Locher, JJ., concur.